[Civ. No. 11954. Second Appellate District, Division One.—June 29, 1940.]

JEANETTE A. DASSO et al., Respondents, v. T. D. BRAD-BURY et al., Appellants.

Joseph A. Spray and Charles P. Gould for Appellants.

J. Edward Haley and Birger Tinglof for Respondents.

WHITE, J.—This is an appeal from an order granting plaintiffs' motion for a new trial on the ground of newly-discovered evidence. The action was one for damages for personal injuries sustained by plaintiff Jeanette A. Dasso when the automobile she was driving was struck by an automobile owned by defendants Mr. and Mrs. T. D. Bradbury and operated by their chauffeur, defendant Fred Rouse, the latter of whom was not served and made no appearance in the action.

In their complaint plaintiffs alleged that defendant Rouse was the agent, servant and employee of defendants Bradbury and at the time of the accident "was acting within the scope and course of his employment and authority". This was denied by the answer. The evidence at the trial disclosed that on the day of the accident, January 22, 1937, defendant Rouse had driven Mrs. Bradbury and her guest to the Santa Anita racetrack, where he left them at about 2:30 o'clock in the afternoon. The accident occurred at about 4:20 P. M. at Monterey Street and Huntington Drive, approximately two miles from the track. On the question of the authority or permission of Rouse to take the Bradbury car away from the track, the only evidence produced by plaintiffs was that of an acquaintance of Rouse, who testified that during the racing season he had seen Rouse several times at a gasoline station in Monrovia, where he bought gas for the car, and that Rouse had taken the witness riding in the car and on occasions had visited a colored settlement in Duarte, coupled with the testimony of Mrs. Bradbury, given under section 2055 of the Code of Civil Procedure, to the effect that Rouse had been her chauffeur and had been in her employ approximately three months before the accident. However, she testified that on the day of the accident when she left the automobile at

the track she said to the chauffeur, "Don't know how long I will be here. Wait"; that it was her practice to have the car parked in a restricted area reserved for clubhouse members, and when she was ready to leave to have the car paged; that she had never known that Rouse used her car when she was not in it; that they bought gasoline in Los Angeles and she had no knowledge that Rouse ever bought gasoline in Monrovia; that she had never given Rouse permission to use the car for his personal pleasure and had never given him permission to take it to Monrovia.

Testifying in behalf of defendants, Mrs. Bradbury stated that at the time of hiring Rouse she told him he was not to use the car without her permission, and that he was not upon any errand for her at the time of the accident. Mr. Bradbury testified to the same general effect. Another witness, who had accompanied Mrs. Bradbury to the track, testified she heard her say to Rouse, "It is a very miserable day. We may not stay very long, so you wait."

Upon the foregoing evidence the trial judge concluded that "there is no showing that the driver of the car was using it either on the business of the defendants Bradbury or with their permission or consent on the business in which he was engaged", and accordingly gave judgment for defendants. Thereafter plaintiffs filed a notice of intention to move for a new trial, naming among other grounds that of newly-discovered evidence. In support of this particular ground plaintiffs filed certain affidavits. One was by plaintiff Jeanette A. Dasso, in which she averred that prior to the commencement of the action a person representing himself as a claims adjuster contacted her for the purpose of effecting a settlement of the lawsuit. Plaintiff Jeanette Dasso's affidavit further alleges that on the occasion of one of these conversations the party representing himself as an adjuster stated to Mrs. Dasso that "it would be useless for her or affiant's husband to file suit against either of the owners of the automobile involved in the accident or against Fred Rouse, the chauffeur who drove the automobile at the time of the collision, for the reason that he" (the adjuster) " . . . intended to hide out said chauffeur so that said defendant Rouse would not be available as a witness on behalf of plaintiffs and would not be available for service upon him as a defendant".

While the affidavit of this plaintiff avers that diligent search was made by her and her coplaintiff to locate and serve defendant Rouse, we are nevertheless confronted with the fact that she was in possession of information concerning her conversation with the so-called adjuster prior to the commencement of the trial and made no effort to communicate this alleged imposition upon the court to the latter. Concerning the averments contained in Mrs. Dasso's affidavit to the effect that persons contacted by her subsequent to the rendition of judgment advised her of certain admissions made by the chauffeur, Rouse, to the effect that he had "free use" of the car at all times while on duty and that he had the permission of Mrs. Bradbury to take the car on the date of the accident in question, it must be borne in mind that such evidence could not be material because it is hearsay. Further, on the motion for new trial on the ground of newly-discovered evidence no representations were made to the court that in the event of a new trial the chauffeur Rouse could be produced or that plaintiffs had reasonable grounds upon which to predicate a belief that he could be located, served as a defendant and produced as a witness.

However, on the hearing of the motion for new trial, there was presented an affidavit by Mrs. Georgia P. Casner to the effect that she was present at the Santa Anita racetrack on the date of the accident at the hour of about 5 o'clock, while both she and Mrs. Bradbury were waiting for their respective cars. In this affidavit Mrs. Casner states that she and Mrs. Bradbury conversed regarding the merits of their respective chauffeurs, and "that Mrs. Bradbury stated that she had told her chauffeur to get gasoline and to be back at about 4:30 P. M. when she first came to the races; that in discussing the merits of her chauffeur, Mrs. Bradbury stated that her car was fully covered and she (Mrs. Bradbury) did not have to worry when her chauffeur had the car out, and could for that reason let him use the car". Further, there was presented an affidavit by B. A. Ruechel to the effect that the wrecked Bradbury car was brought to his garage in Monrovia and that Mrs. Bradbury also came there, but that in discussing the accident she "made no remarks of any kind to the effect that the colored chauffeur had stolen the car that afternoon or was using the car that afternoon without her permission . . . that affiant was present when Mrs. Bradbury

made her report to the police officers and that she did not at that time make any statement to the effect that the chauffeur was using her automobile without her permission''.

In opposition to this showing, defendants filed affidavits by Mrs. Bradbury, the insurance adjuster, the doorman at the racetrack clubhouse, and a police officer, all in substance contradicting plaintiffs' affidavits as to what Mrs. Bradbury had said at the track concerning her chauffeur's permission to use the car, and denying any attempt by the adjuster to conceal the chauffeur, as charged by plaintiffs.

While conceding that the granting or denying of a new trial rests in the discretion of the trial judge, appellants contend that the record herein discloses a clear case of an improper exercise or abuse of discretion, for the reason, according to appellants, that plaintiffs made no showing whatever that the evidence could not with reasonable diligence have been discovered and produced at the trial and also failed to show that the evidence was newly discovered.

We are not unmindful that the claim of newly-discovered evidence as a ground for or warranting a new trial is universally looked upon by the courts with distrust and disfavor. Public policy demands that a litigant should be compelled to exhaust every reasonable effort to produce at the trial of his case all existing evidence in his behalf. It has been said that the circumstance that the testimony has just been discovered when it is too late to introduce it is so suspicious that courts require the very strictest showing of diligence. (*People* v. *Freeman*, 92 Cal. 359, 366 [28 Pac. 261].) This does not mean, however, that when the trial court has exercised its discretion and granted a new trial that such action is looked upon with either distrust or disfavor. In fact, it has been said that one of the most prolific causes of miscarriages of justice is the reluctance of trial judges to exercise the discretion with which they are clothed to grant a new trial when the circumstances show that justice would be thereby served. This by reason of the curtailed power of appellate courts to disturb the discretion of the trial court once it is exercised in such matters. It is recognized that despite the exercise of diligent effort, cases will sometimes occur where, after trial, new evidence most material to the issues and which would probably have produced a different result is discovered. It is for such cases that the remedy of a motion for a new

trial on the ground of newly discovered evidence has been given. As declared by subdivision 4 of section 657 of the Code of Civil Procedure, the court may grant a new trial on the ground of "newly discovered evidence, material to the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial". True, a party who relies upon this ground must have made a reasonable effort to produce all his evidence at the trial, and he will not be allowed a new trial for the purpose of introducing evidence known to him and obtainable at the time of trial, or which would have been known to him had he simply exercised reasonable effort to discover and present it. Both the rule just enunciated, as well as the requirement that the evidence be material and such as to render a different verdict or decision reasonably probable upon a retrial, present questions peculiarly addressed to the discretion of the trial court.

 In the counteraffidavits filed by appellants in the lower court, we are not directed to any particulars indicating wherein respondents were lacking in diligence in attempting to produce the evidence at the trial. But the affidavit of Mrs. Dasso does disclose the futility of any additional efforts on the part of respondents to produce some of the evidence, because of the alleged surreptitious activities on the part of the adjuster referred to in her affidavit.

Bearing in mind that the aim and object of judicial proceedings is to do, so far as humanly possible, even and exact justice through ascertainment of the truth, we cannot say in the instant case that the trial judge abused the discretion vested in him to grant a new trial when by his action in so doing he made it possible to present to the court evidence concededly most material to a fair and just decision, for surely it cannot be denied that the newly-discovered evidence of the witness Mrs. Casner was not only material to the issues, but if believed by the court would probably have produced a different result. The rule governing the power of appellate tribunals to disturb orders made by the trial court in the exercise of a discretion vested in it was thus stated by this court in the case of *Brown* v. *Newby, ante,* p. 615 [103 Pac. (2d) 1018]: "It should be emphasized in that connection that the showing on appeal is wholly insufficient if it presents a state of facts, a consideration of which, for the purpose of judicial action, merely affords an opportunity for

a difference of opinion. An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice; without indulging in further detail, the record reveals appellants' showing to be insufficient in this regard. (See 2 Cal. Jur., p. 896, et seq.)''

For the foregoing reasons the order appealed from is affirmed.

York, P. J., and Doran, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 26, 1940.