[S. F. No. 20284. In Bank. Jan. 22, 1960.]

PAUL W. YARROW et al., Appellants, v. STATE
OF CALIFORNIA, Respondent.

428

Carr, McClellan, Ingersoll & Thompson, Luther M. Carr and Richard C. Amick for Appellants.

Edmund G. Brown and Stanley Mosk, Attorneys General, John E. Fourt, Deputy Attorney General, Robert E. Reed, Robert E. Carlson, Ropers & Majeski, Ropers, Majeski & Kane and Harold Ropers for Respondent.

WHITE, J.—This is an appeal from an order granting the defendant's motion for a new trial.

Plaintiffs husband and wife, brought this action against the state[1] claiming to have suffered personal injuries and property damage by reason of the negligent operation of motor vehicles by state employees. They relied on the provisions of section 400[*] of the Vehicle Code[2] as evidence of the state's consent to be sued. The state denied the allegations of the complaint and pleaded contributory negligence as an affirmative defense. In its pleadings and in successive motions at the trial for judgment on the pleadings, for nonsuit, for directed verdict and for judgment notwithstanding the verdict, the state also raised the issue of law that the provisions of section 400 of the Vehicle Code must be construed in conjunction with the provisions of section 453, subdivision (b) of that code.[3] It contended that these sections, taken together, indicate there is no waiver of sovereign immunity for the negligent operation of motor vehicles by state employees while they are "actually engaged in work upon the surface of a highway," and that inasmuch as the state employees and vehicles in question were actually engaged in work upon the surface of a highway at the time and place of the accident, this action could not be maintained. The plaintiffs took the position that the provisions of section 453, subdivision (b) of the Vehicle Code do not

[1]Doe defendants were named in the complaint. During the trial the court refused to grant plaintiffs' motion to substitute State employees for the Doe defendants on the ground of laches; it also denied the defendant's motion to dismiss the action as to these Doe defendants.

[*]All Vehicle Code citations refer to the sections as numbered prior to the 1959 recodification.

[2]Section 400 provides that "The State . . . is responsible to every person who sustains any damage by reason of . . . injury to person or property as the result of the negligent operation of any . . . motor vehicle by an . . . employee . . . when acting within the scope of his . . . employment. . . ." It further provides that the state is subrogated to the rights of the injured person against the government employee and that it may insure its liability and charge the premium therefor against the general fund of the state.

[3]This section provides that ". . . (b) The provisions of this code shall not apply to public employees and publicly owned teams, motor vehicles and other equipment while actually engaged in work upon the surface of a highway . . . but shall apply to such persons and vehicles when traveling to or from such work."

affect the state's waiver of immunity from suit and that at most they exempt the public employees from the penal consequences of violations of Vehicle Code rules of the road. The trial court denied each of the foregoing motions, thus holding adversely to the state on the jurisdictional issue,[4] and determining that factual issues were presented which should go to the jury.

The jury returned verdicts in favor of plaintiffs Edna and Paul Yarrow in the amounts of $13,534.38 and $772.06, respectively, and judgment was entered thereon. The state moved for a new trial on all of the statutory grounds (Code Civ. Proc., § 657) including insufficiency of the evidence and that the verdict was against law. The minute order from which this appeal is taken is herewith quoted in full:

"Plaintiffs admit that if they can recover, the recovery must be under Section 400 of the Vehicle Code.

"Section 400 of the Vehicle Code waives the common law immunity of the State and Municipal bodies for damages because of negligence of public employees; but limits such waiver to damages occasioned by the operation of vehicles.

"In our opinion, Sections 400 and 453 must be read together. Section 453B exempts public employees and '. . . Motor Vehicles and other equipment, while actually engaged in work upon the surface of the highway, etc.' from the provisions of the Vehicle Code.

"In our opinion, the Section shows no intention by the Legislature to exempt from the provisions of the Vehicle Code not only public employees, but the public employer.

"The evidence is clear that the State employees were engaged in work upon the surface of the highway and were operating motor vehicles. Therefore plaintiffs must prove some negligence in the operation of motor vehicles not arising from a violation of a Section of the Vehicle Code, in order to recover against the defendant, State of California. In our opinion, the evidence does not show any such negligence. Plaintiffs suggest that State Employees were negligent in not waiving a warning to plaintiffs, as was done to a vehicle approaching from the west, or that they were negligent in not sweeping loose dirt from the surface of the highway.

"Perhaps such omissions were acts of negligence, but we

---

[4]The defense of sovereign immunity presents a jurisdictional question. (*People* v. *Superior Court*, 29 Cal.2d 754, 756 [178 P.2d 1, 40 A.L.R.2d 919].)

cannot see how they constitute any part of the operation of a motor vehicle, as required by Section 400.

"Motion for judgment notwithstanding the verdict is denied.

"Motion for new trial is granted upon the ground of insufficiency of the evidence to sustain or justify the verdict. Done in open court this 4 day of April, 1957.

"Edmund Scott, Judge."

The rules on appeal from an order granting a new trial are well settled. ▉ All presumptions favor the order as against the verdict and the order will be affirmed if it may be sustained on any ground, although the reviewing court might have ruled differently in the first instance. (*Shaw* v. *Pacific Greyhound Lines,* 50 Cal.2d 153, 159 [323 P.2d 391] ; *Ballard* v. *Pacific Greyhound Lines,* 28 Cal.2d 357, 358-359 [170 P.2d 465].) ▉ Appellate review is not limited to the ground stated in the lower court's order (*Kauffman* v. *Maier,* 94 Cal. 269, 276 [29 P. 481, 18 L.R.A. 124] ; *Lovett* v. *Dintzer,* 131 Cal.App.2d 165, 166 [280 P.2d 58]) with the exception of the ground of insufficiency of the evidence. ▉ If the order does not specify that it is granted on this ground, it must be conclusively presumed on appeal that the order was not based thereon. (Code Civ. Proc., § 657.)

▉ In considering the sufficiency of the evidence on the hearing of a motion for new trial it is the exclusive province of the trial court to judge the credibility of the witnesses, to determine the probative force of testimony and to weigh the evidence, and it may draw reasonable inferences therefrom opposed to those drawn by the trier of fact at the trial. (*Brooks* v. *Metropolitan Life Ins. Co.,* 27 Cal.2d 305, 307 [163 P.2d 689] ; *Green* v. *Soule,* 145 Cal. 96, 102-103 [78 P. 337] ; *Dasso* v. *Bradbury,* 39 Cal.App.2d 712, 717-718 [104 P.2d 128].) ▉ It is only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse an order granting a new trial on this ground. (*Richardson* v. *Ham,* 44 Cal.2d 772, 775 [285 P.2d 269] ; *Williams* v. *Field Transp. Co.,* 28 Cal.2d 696, 698 [171 P.2d 722] ; *Birch* v. *Mahaney,* 137 Cal.App.2d 584, 585-586 [290 P.2d 579] ; 3 Witkin, California Procedure, 2062.) ▉ Error is not presumed and the burden is upon the plaintiffs herein to affirmatively show its presence in the record (*Power* v. *Fairbanks,* 146 Cal. 611, 614 [80 P. 1075] ; *Scott* v. *Renz,* 67 Cal.App.2d 428, 431 [154 P.2d 738]) or a manifest and unmistakable abuse of discretion. (*Shaw* v. *Pacific Greyhound Lines, supra,* 50 Cal.2d

153, 159; *Crane* v. *Middleton,* 123 Cal.App.2d 517, 522 [267 P.2d 32]; *Brinkerhoff* v. *Ferguson,* 107 Cal.App.2d 175, 176 [236 P.2d 588]; *Perry* v. *Fowler,* 102 Cal.App.2d 808, 812 [229 P.2d 46].)

A complete record has not been furnished by the plaintiffs on this appeal, some of the testimony and all of the instructions having been omitted. It cannot therefore be determined that there was no error of law at the trial upon which the order might have been granted. A review of the record as furnished, however, indicates that there was a conflict in the evidence as to the negligence of the state employees and that there was some evidence of contributory negligence on the part of the plaintiffs. No abuse of discretion therefore appears in the granting of a new trial on the ground of insufficiency of the evidence.

The record shows that on September 6, 1955, the plaintiffs, with the husband driving, were proceeding westerly along a two-lane state highway about 25 miles west of Coalinga in the Priest Valley area when their car skidded and overturned, injuring both plaintiffs and damaging their vehicle. It was about 1:45 p. m. and the day was clear. The husband testified that the road was mountainous and curving with sharp hairpin turns, with an open straightaway space about a mile long just before the rise and curve in the road where the accident occurred. In this level section the plaintiffs could see the curve ahead and they noticed a red and black highway "men and equipment working" sign, with a red flag on top. They saw no workmen or signs of highway repair at that location, but observed an unattended state highway loader truck by the warning sign. They had passed a similar sign some three-quarters of a mile east. This second sign was located some 900 to 1,200 feet east of the area where the workmen were filling and leveling the shoulder in the opposite or eastbound lane of the highway. From this straight section the road curves sharply to the right and winds through and up a cut in a hill, with left banks sufficiently high to hide vehicles in the cut from westbound travelers. The roadway is 20 feet wide with a white line down the middle and gravel shoulders five feet wide. There is a conflict in the evidence as to the speed with which the plaintiffs' car rounded the curve and entered this cut (60 or 30 mph), the distance from which the plaintiffs could and should have seen the highway crew and equipment and whether there was loose gravel or dirt on the pavement at the point where Paul Yarrow attempted to put on the

brakes of his car. He testified that the bulldozer appeared to be entirely blocking his lane, as well as the opposite lane, and that he intended to try and pass on the shoulder when his car skidded. His vehicle came to rest some 20 feet short of the bulldozer. The state's evidence was that a dump truck was waiting on the opposite shoulder to dump its load while the bulldozer was backing up from leveling a prior load and preparatory to leveling the new load; that no flagman had been posted to warn travelers coming from the east because no work was being done on the travelway; that warning flags had been posted; that travelers approaching from the west (the lane in which the vehicles were obstructing the road) had been successfully halted by waving to them from the bulldozer, and that when the workmen saw the plaintiffs coming they attempted to halt them in the same way. There was evidence that the bulldozer was only about one foot over the white line at the time of the accident, leaving a 9-foot paved section and a 5-foot shoulder for passing. It was the plaintiffs' position that the combination of circumstances made this a hidden trap, and that but for the negligence of the state employees in blocking the road at this particular place the accident would not have happened. It is not necessary on this appeal to recite all the evidence in support of the verdict. The foregoing epitome thereof will suffice.

The plaintiffs seek to evade the application of the rule that if there is any evidence which would support a contrary verdict the order granting a new trial on that ground must be upheld, by arguing that the minute order shows on its face that the real basis of the order was that the verdict was against law, and not for insufficiency of the evidence; that the order was based upon the court's erroneous construction of the applicable law; that therefore there was no proper basis for granting the motion, and the order should be reversed. They argue that the court actually granted the motion for judgment notwithstanding the verdict "in the uniform of an order granting a motion for new trial based upon the insufficiency of the evidence to justify the verdict."

If a judgment or order is ambiguous, it is subject to construction by a reviewing court. Review of the order here in question indicates first, that it provides in simple, unequivocal words of decision, "Motion for judgment notwithstanding the verdict is denied. Motion for new trial is granted upon the ground of insufficiency of the evidence to sustain or justify the verdict." No ambiguity appears in this

language. The words used are appropriate for the denial or granting of such motions. They were employed by a judge of many year's judicial experience and appear both in the signed memorandum opinion and in the minute order entered at his direction on the same date[5] and it would be an abuse of the appellate prerogative to hold that he meant the converse of what he said in making these orders.

There is nothing in the other recitals in the order which compels a contrary conclusion. There is no manifest inconsistency between the denial of a motion for judgment notwithstanding the verdict and the granting of the alternative motion for a new trial on the ground of the insufficiency of the evidence. The issue on appeal from an order denying a motion for judgment notwithstanding the verdict—and this appeal is from the whole of the order (Code Civ. Proc., § 629) —is whether there is any sufficient substantial evidence to support a verdict on any tenable theory of liability. (*Reynolds* v. *Willson*, 51 Cal.2d 94, 99 [331 P.2d 48].) ██ In denying the motion for judgment notwithstanding the verdict the trial court obviously concluded that the issue of negligence was a factual matter which should go to the jury, and that if the jury found for the plaintiffs that the state could be held liable in damages. If the court had determined that the state was immune from any liability in this matter it would have been required to grant the motion for judgment notwithstanding the verdict.

██ In granting a new trial the court is not bound by its prior rulings on questions of law (*Carney* v. *Simmonds*, 49 Cal.2d 84, 90 [315 P.2d 305]) or its prior view of the evidence. (*Churchill* v. *Flournoy*, 127 Cal. 355, 362 [59 P. 791].) It appears obvious that by denying the motion for judgment notwithstanding the verdict and granting the motion for a new trial on the ground of insufficiency of the evidence, the trial court held that the state was not protected by sovereign immunity from a judgment herein but that the record did not contain sufficient evidence to make the state liable to these plaintiffs.

██ The order is measured by its terms and not by any reasons the court may give for it. (*Weisser* v. *Southern Pacific*

[5]The identical language of the memorandum opinion is employed in the minute order. The memorandum opinion contains the same words of decision and to that extent is in itself an order of the court under section 1003 of the Code of Civil Procedure. (*Cf. Maxwell* v. *Perkins*, 116 Cal. App.2d 752, 755, 757, 758 [255 P.2d 10].)

*R. Co.,* 148 Cal. 426, 428 [83 P. 439, 7 Ann.Cas. 636] ; *Newman* v. *Overland etc. Ry. Co.,* 132 Cal. 73, 75 [64 P. 110].) It is recognized that "the reasons given by the court for its action may be bad, and the decision, at the same time, correct for other reasons. It is the action of the court that is presumed to be correct and this presumption obtains even though the reasons given may be bad." (*Power* v. *Fairbanks, supra,* 146 Cal. 611, 615; *Davey* v. *Southern Pacific Co.,* 116 Cal. 325, 330 [48 P. 117].) The reasons stated may be valuable in illustrating the trial judge's theory but they are not binding on an appellate court (*Scannell* v. *Schmidt,* 128 Cal.App.2d 19, 22 [274 P.2d 455]) and they may never be used to impeach the order or judgment. (*DeCou* v. *Howell,* 190 Cal. 741, 751 [214 P. 444].) Special consideration has been given to the trial court's statement of reasons in situations where they really constituted the only grounds upon which a judgment or order might be affirmed (*Coakley* v. *Ajuria,* 209 Cal. 745, 749 [290 P. 33]). However, that is not the situation here. As appellants point out, the recitals in this order are contradictory to the portion of the order denying the motion for judgment notwithstanding the verdict. The argument advanced by them that unless the trial judge meant to qualify and limit his grant of the new trial about 90 per cent of the contents of his order was a pure waste of time, is not impressive in the face of the plain unequivocal language of the order denying that motion and granting the motion for new trial.

 An order will not be deemed to be limited by an opinion or judicial reasoning unless the intention to limit is clearly expressed in the order. (*Classen* v. *Thomas,* 164 Cal. 196, 198 [128 P. 329].) The mere statement of reasons in the order is not sufficient to show such intention to limit. (*Bridgford* v. *Sawyer,* 105 Cal.App.2d 631, 633 [234 P.2d 95] ; *Diaz* v. *Shultz,* 81 Cal.App.2d 328, 333 [183 P.2d 717].) *Long* v. *Newlin,* 144 Cal.App.2d 509, 511 [301 P.2d 271], relied on by appellants is not controlling here. In that case the order specifically provided that it was "granted upon the grounds of insufficiency of the evidence to show that it was not necessary to have an accounting." Under the law an accounting was not necessary in that case and it was therefore held on appeal that the new trial had been granted on an erroneous ground. No other grounds than insufficiency of the evidence to prove this one phase of the case were urged on the appeal, or were apparently shown by the record on appeal, for granting or sustaining the order. In *Pacific Hardware & Steel Co.* v.

*Cheim,* 169 Cal.App.2d 339, 342 [337 P.2d 508], cited by appellants, it was held that an order which is general "and does not designate the ground on which it was granted . . . must be presumed to be based upon grounds other than insufficiency of the evidence" and that if it may be inferred from a construction of the order as a whole that insufficiency is the ground, the order must be held to have been based upon such ground. *Piru Citrus Assn.* v. *Williams,* 95 Cal.App.2d 911, 915-916 [214 P.2d 426], is to the same effect, namely, that where the order granting the motion for new trial goes beyond a mere general order (i.e., "a new trial is granted") and uses any language that reasonably can be construed as including insufficiency of the evidence, the language will be interpreted as including that ground. ▆ The order here in question used specific language granting the new trial on this ground and no interpretation is required to reach that conclusion. Any language illustrative of the trial court's theory or contradictory to the order expressly made, is therefore irrelevant and must be disregarded. ▆ As stated in *Stone* v. *Los Angeles County Flood Control Dist.,* 81 Cal.App.2d 902, 907 [185 P.2d 396] : "The question that concerns the reviewing court is whether or not the final decision, judgment or order is correct and not whether the reasons expressed in the opinion are in harmony with the result reached or whether they sustain the decision."

▆ The order with which we are here concerned recites the code provisions placed in issue at the trial and the court's opinion that the evidence does not show negligence in the operation of a motor vehicle by the state employees. Plaintiffs argue that either this was a case of "negligent operation" under section 400 of the Vehicle Code, or it wasn't, and that it was solely a legal, not a factual, decision that was made by the trial court in granting the new trial. Under the rules hereinabove stated, however, in the absence of an express limitation in the order, all intendments must be applied in its favor. It must therefore be held that the recitals in the minute order made in the case at bar do not constitute a limitation on the order explicitly made and that the record discloses no abuse of discretion in granting a new trial on this ground. The order granting a new trial must therefore be affirmed upon the ground of insufficiency of the evidence.

▆ Since a new trial was granted in this cause, it becomes necessary for us ". . . to pass upon and determine all the questions of law involved in the case, presented upon such

appeal, and necessary to the final determination of the case.''
(Code Civ. Proc., § 53.) Upon the trial of this action the question was squarely presented as to whether section 453, subdivision (b), of the Vehicle Code was intended by the Legislature to effect a total or a partial revivor of the state's sovereign immunity in the operation of automobiles by state employees in the course of their employment. If a total revivor was intended, the trial court should have granted the motion for judgment notwithstanding the verdict, in which event a new trial would be proscribed. If a partial revivor was intended, this court should determine the extent and effect thereof, for the guidance of the court upon the retrial. We have therefore considered the question of the interrelation of sections 400 and 453, subdivision (b) of the Vehicle Code insofar as the latter contains any restriction upon the broad waiver of sovereign immunity contained in section 400 of that code.

Section 400 of the Vehicle Code is based upon former section 1714½ of the Civil Code, enacted in 1929 (Stats. 1929, ch. 260, p. 565), amended in 1931 (Stats. 1931, ch. 122, p. 168), and transferred to the Vehicle Code when it was adopted by the Legislature in 1935. It is constitutional (*Heron* v. *Riley,* 209 Cal. 507 [289 P. 160]). Its effect is to impose liability on the public employer for the negligent operation of public vehicles in the performance of governmental, as well as proprietary functions. (*Raynor* v. *City of Arcata,* 11 Cal.2d 113, 119 [77 P.2d 1054].) The maintenance and repair of highways is a governmental function.

Section 453 was first enacted in 1923 (Stats. 1923, ch. 266, p. 563, § 144), and consisted of what is now subdivision (a). Subdivision (b) was added in 1947 (Stats. 1947, ch. 897, p. 2095; amend. Stats. 1951, ch. 690, p. 1902). Subdivision (c) was added in 1951 (Stats. 1951, ch. 690, p. 1902). Under section 11 of the Vehicle Code ''Whenever any reference is made to any portion of this code . . . such reference shall apply to all amendments and additions thereto heretofore or hereafter made.''

Section 453 in its entirety provides as follows:
''(a) The provisions of this code applicable to the drivers of vehicles upon the highways shall apply to the drivers of all vehicles while engaged in the course of employment by this State or any political subdivision thereof or any municipal corporation or district therein including authorized emergency

vehicles subject to those exemptions granted such authorized emergency vehicles in this code.

"(b) The provisions of this code shall not apply to public employees and publicly owned teams, motor vehicles and other equipment while actually engaged in work upon the surface of a highway, or work of installation, removal, repairing or maintaining traffic signs, signals or other traffic control devices, but shall apply to such persons and vehicles when traveling to or from such work.

"(c) The provisions of this division of the code shall not apply to the duly authorized representatives of any public agency while actually engaged in performing any of the work described in subdivision (b) hereof but shall apply to such persons when traveling to and from such work."

It is readily apparent that there is some difference in terminology in these subdivisions. Subdivision (a) refers to "the provisions of this code applicable to the drivers. . . ."; subdivision (b) refers "to the provisions of this code"; and subdivision (c) refers to "the provisions of this division of the code." The division referred to in subdivision (c) is division IX, including sections 450 to 555, inclusive, of the Vehicle Code, which relate to traffic laws, speed laws, and general rules of the road. It appears plausible that the Legislature intended the same meaning to apply, and not to specifically legislate as to subdivision (b) alone that the entire provisions of the Vehicle Code (including § 400 thereof) were excluded. Any difference in the terminology employed in these three subdivisions, insofar as references to the provisions of the code are concerned, must be held to be inadvertent and immaterial.

 The Legislature has indicated herein its intention to limit these subdivisions to the traffic laws stated in the subdivision indicated in the Vehicle Code as division IX. The state's contention that section 453, subdivision (b), indicates an intention to retain sovereign immunity for the negligent operation of motor vehicles while actually engaged in highway construction or repair is not tenable and cannot be sustained.

 The provisions of section 453, subdivision (b) seem to be clearly limited to the penal consequences of violations of Vehicle Code regulations and not to operate to relieve the public employee or the public employer from civil liability for personal or property damage caused by negligent operation of motor vehicles by public employees while so engaged. This conclusion is strengthened by a consideration of the provisions of section 401 of the Vehicle Code which provides that "no

members of any police or fire department . . .is liable for civil damages on account of personal injury . . . resulting from the operation in the line of duty, of an authorized emergency vehicle while . . .'' Had the Legislature intended to relieve highway employees from civil damages, as it did the operators of emergency vehicles, it manifestly would have clearly so provided. It would serve no useful purpose to analyze the various exemptions and distinctions made by the Legislature as to the operation of emergency vehicles. We are here concerned only with the operation of vehicles in connection with state highway maintenance and repair.

To the extent that the public employee is relieved from the *per se* consequences of violation of Vehicle Code regulations, it would seem that the public employer, either under the doctrine of *respondeat superior*, or under imputed liability as the owner of the vehicles involved, should also be relieved from liability for *per se* negligence. (See *Raynor* v. *City of Arcata, supra,* 11 Cal.2d 113, 121-122.) However, neither the public employer nor the public employee appears to be relieved from ordinary negligence in the operation of motor vehicles in connection with actual work upon the highway. The trial court held, in its minute order, that section 453, subdivision (b) of the Vehicle Code "in our opinion . . . shows no intention by the Legislature to exempt from the provisions of the Vehicle Code not only public employees, but the public employer.'' It might well be argued either that the public employer is relieved from *per se* negligence or imputed liability, and is still subject to common law negligence and its waiver of its common law immunity, or that it is liable for both *per se* negligence and common law negligence. The former appears to be the more reasonable solution, particularly in view of the right of subrogation given to the state under section 400.

If the former is the correct solution of this dilemma, then the determination of what duty of care is owed to a particular plaintiff must be made upon the facts of the individual case. Reasonable care would appear to have required the giving of a warning by the state highway crew to approaching traffic under the situation here presented. (See *Continental Ins. Co.* v. *Pacific Greyhound Lines,* 43 Cal.App.2d Supp. 877 [111 P.2d 37], holding that the operator of a mechanical sweeper on a highway in connection with road improvement is under an obligation to exercise reasonable care and caution in behalf of the traveling public.) Under the evidentiary features of the instant case, manifestly it cannot be held as a

matter of law that adequate warning notice was not given or that the acts of the state employees were the proximate cause of the plaintiffs' injuries. A finding or verdict of absence of negligence in this respect could have been found from the testimony that warning signs were posted which should have caused the plaintiffs to exercise caution in entering this winding mountain road with obstructed vision ahead. Whether they exercised due caution is also a factual matter for the jury and for consideration by the trial judge on motion for a new trial.

It is not necessary to determine in this proceeding what would be the result, if the state were held liable for these damages, on its right of subrogation against the public employees given to it by section 400 of the Vehicle Code as the latter were not joined as defendants.

The order is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., Spence, J., McComb, J., and Dooling J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.